1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

8
9
10
11
12
13
14
15
16
17
18
19

| | |
|---|---|
| JOHN WALTER BRIDGE,<br><br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br><br>Defendant. | No. CV-12-023-LRS<br>**ORDER GRANTING<br>DEFENDANT'S MOTION<br>FOR SUMMARY JUDGMENT,<br>*INTER ALIA*** |

20   **BEFORE THE COURT** are Plaintiff's Motion For Summary Judgment

21   (ECF No. 13) and the Defendant's Motion For Summary Judgment (ECF No.

22   18).

23

24                                    **JURISDICTION**

25       John Walter Bridge, Plaintiff, applied for Title II Disability Insurance

26   Benefits ("DIB") and Title XVI Supplemental Security Income benefits ("SSI")

27   on March 12, 2010.  The applications were denied initially and on

28   reconsideration.  Plaintiff timely requested a hearing and a hearing was held on

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 1**

1    March 3, 2011, before  Administrative Law Judge (ALJ) Marie Palachuk.

2    Plaintiff, represented by counsel, appeared and testified at this hearing.  Also

3    testifying were Richard Hutson, M.D., as a medical expert, and K. Diane

4    Kramer, as a vocational expert. On April 8, 2011, the ALJ issued a decision

5    denying benefits.  The Appeals Council denied a request for review and the

6    ALJ's decision became the final decision of the Commissioner.  This decision is

7    appealable to district court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

8

9                        **STATEMENT OF FACTS**

10           The facts have been presented in the administrative transcript, the ALJ's

11   decision, the Plaintiff's and Defendant's briefs, and will only be summarized

12   here.  At the time of the administrative hearing, Plaintiff was 50 years old.  He

13   has a high school education and past relevant work experience as a landscaping

14   laborer.  Plaintiff alleges disability since March 13, 2007, due to orthopedic

15   impairments.  Plaintiff's date last insured for DIB is June 30, 2012.

16

17                        **STANDARD OF REVIEW**

18           "The [Commissioner's] determination that a claimant is not disabled will

19   be upheld if the findings of fact are supported by substantial evidence, 42 U.S.C.

20   § 405(g)...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial

21   evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112,

22   1119 n.10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*,

23   888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and*

24   *Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  "It means such relevant

25   evidence as a reasonable mind might accept as adequate to support a

26   conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).

27   "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw

28   from the evidence" will also be upheld.  *Beane v. Richardson*, 457 F.2d 758, 759

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

(9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989), quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

**ISSUES**

Plaintiff argues the ALJ  erred by: 1) failing to address Plaintiff's chronic pain disorder at Step Two of the Sequential Evaluation Process; 2) rejecting the opinions of Plaintiff's treating physician and accepting the opinions of the non-examining medical expert who testified at the administrative hearing; and 3) arriving at a conclusion about Plaintiff's physical residual functional capacity (RFC) that was not supported by substantial evidence in the record.

**DISCUSSION**
**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 4**

perform other work in the national economy in view of her age, education and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found that Plaintiff has the following "severe" physical impairments: degenerative disk disease of the lumbar and cervical spine, status post surgery, and status post right shoulder rotator cuff surgery.  The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1.  The ALJ found that plaintiff has the residual functional capacity (RFC) to perform less than a full range of "light" work, 20 C.F.R. §§404.1567(b) and 416.967(b), specifically that he can lift and carry up to 20 pounds occasionally, and up to 10 pounds frequently; he can stand and/or walk for six hours and can sit for six hours, although it is necessary for him to have the option to alter positions as needed; he can stoop, kneel, crouch and crawl occasionally; he cannot climb ladders, ropes, and scaffolds; he cannot reach above shoulder level with the right upper extremity; and he should not have concentrated exposure to extreme temperatures, humidity, wetness, vibrations, or hazards.  While the ALJ found this RFC precludes Plaintiff from performing his past relevant work as a landscaping laborer which requires medium exertion, she

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 5**

also found, based on testimony from the vocational expert, that it does not preclude Plaintiff from performing other jobs existing in significant numbers in the national economy. Accordingly, the ALJ concluded the Plaintiff is not disabled.

**CHRONIC PAIN DISORDER AS "SEVERE" IMPAIRMENT**

The record indicates Plaintiff did not undergo a psychiatric or psychological evaluation to support any type of mental impairment diagnosis.[1] What the record does establish is that Plaintiff suffers from physical impairments which cause him to experience pain. The ALJ found these physical impairments to be "severe" at Step Two and went on to consider how these impairments, including the pain caused by them, impact Plaintiff's RFC. The ALJ did not err in failing to designate "chronic pain disorder" as one of Plaintiff's "severe" impairments at Step Two, especially so since Plaintiff's pain was considered by the ALJ in determining Plaintiff's RFC and his ability to perform his past relevant work (Step Four) and other work existing in the national economy (Step Five). The ALJ considered the entirety of the medical record, including specifically the reports of Antoine Tohmeh, M.D., Timothy Meyer, M.D., Joseph Charyk, M.D., and Vivian Moise, M.D., which Plaintiff has singled out as establishing his chronic pain. The ALJ acknowledged Plaintiff's alleged chronic pain- "claimant alleged that he cannot work due to constant pain in his back, neck, and right shoulder" (Tr. at 14)- but while his medically determinable impairments could be expected to cause some pain, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects

---

[1] Treating physician, Vivian Moise, M.D., indicated that "emotional factors" did not contribute to the severity of Plaintiff's symptoms and functional limitations, and that although he suffered from depression, it was "situational due to pain [and] inability to work." (Tr. at p. 422).

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 6**

of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." *Id.* This renders irrelevant the ALJ's failure to designate "chronic pain disorder" as a "severe' impairment at Step Two. See *Bradley v. Commissioner of Social Security Administration*, 2013 WL 1313748 (E.D. Tex. 2013) at *4, and *Andrade v. Astrue*, 2012 WL 1106864 (N.D. Tex. 2012) at *5 n. 3., adopted at 2012 WL 1109476 (N.D. Tex. 2012).

**TREATING PHYSICIAN'S OPINION/CREDIBILITY**

It is settled law in the Ninth Circuit that in a disability proceeding, the treating physician's opinion is given special weight because of his/her familiarity with the claimant and his physical condition. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Smolen v. Chater,* 80 F.3d 1273, 1285-88 (9th Cir. 1996); *Flaten v. Secretary of Health and Human Serv*., 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). If the treating physician's opinion is not contradicted, it can be rejected only with clear and convincing reasons. *Lester,* 81 F.3d at 830. If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *See Flaten*, 44 F.3d at 1463; *Fair*, 885 F.2d at 605. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 7**

Plaintiff was first seen by Dr. Moise in February 2010 "to consider rehabilitative interventions to get him less inactive and less debilitated." Based on her examination on that first occasion, she concluded:

> The patient has just about the most severe chronic lumbar spasm I have ever seen and very severe MRI abnormalities with regard to the degree of spondylolithesis. In my opinion, the severity of his lumbar problem (not even including the fact that he has cervical and thoracic problems as well) definitely precludes him from ever being able to return to work. This patient is totally and permanently disabled, in my opinion, and should be awarded Social Security Disability, in my opinion. I do not think any type of exercise is going to relieve these chronic spasms and get this patient tolerating more activity . . . .

(Tr. at p. 346).

In June 2010, Dr. Moise stated: "Without physical or chiropractic treatment, he is at maximum medical improvement with regard to his chronic pain syndrome and still appears to me to be appropriate for Social Security Disability due to the extensiveness of his pain and muscle spasm." (Tr. at p. 365).

In February 2011, Plaintiff made an appointment with Dr. Moise so she "could complete a functional capacity evaluation to assist with his application for disability benefits." (Tr. at 417). The Plaintiff reported that he could "tolerate max of 30-40 min sitting due to pain and numbness, 30 min standing, 15-30 min walking;" that he could briefly bend, but can't sustain even very slight bend for more than a minute or two;" that he could "tolerate lifting up to about 40 lbs.;" and that he "[c]ould not tolerate the labor type jobs he did in the past." (*Id.*). Dr. Moise's "impression" was:

> CHRONIC PAIN SYNDROME (NECK, MID BACK, LOW BACK) . . . . Due to residuals of neck and low back surgeries, inflammed (sic) sacro-iliac joints and with severe residual neck, mid-back and low back spasm, this patient is clearly disabled from all work. He self reports activity tolerances that are above the activity restrictions I recommend he follow to prevent even further increase in back spasms. The self-reported activity . . . could not be tolerated more than 2 hr/day.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 8**

Definitely not for a half-time or full time job, without definite
worsening of his condition.

(Tr. at pp. 418-19).

In the "Physical Residual Functional Capacity" form completed by her
(Tr. at pp. 421-424),  Dr. Moise indicated that "[r]arely" during the typical
workday would Plaintiff's "experience of pain or other symptoms [be] severe
enough to interfere with attention and concentration needed to perform even
simple work tasks" and that he would be "[c]apable of low stress jobs."
Notwithstanding that, Dr. Moise also indicated Plaintiff could sit only 15
minutes before having to get up; stand for only 15 minutes before needing to sit
down or walk around; could sit for a total of about two hours in an eight hour
workday; could stand for a total of about two hours in an eight hour workday;
would need to walk around approximately every 30 minutes for a two minute
period; would need a job permitting him to shift positions at will from sitting,
standing or walking; would need to be able to take unscheduled breaks four
times a day for 15 minute periods; could rarely carry 20 pounds and occasionally
carry 10 pounds; could never hold his head in a static position and rarely look
down or turn his head left or right; could never climb ladders and could never or
rarely twist, stoop, crouch/squat; and that he has significant limitations with
reaching, handling or fingering.  Dr. Moise opined that Plaintiff would on
average be absent from work about three days a month as a result of his
impairment.  She also opined that Plaintiff's symptoms and limitations had
existed since 2007.

The ALJ gave "little weight" to the opinions of Dr. Moise because the
doctor did not "clearly diagnose the pathology associated with the claimant's
alleged problems" and because "her opinions are not consistent with either her
own findings, the findings of various other treating doctors, or the claimant's
own report of symptoms."  (Tr. at p. 17).  Even assuming Dr. Moise did

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 9**

diagnose the pathology associated with Plaintiff's physical problems and that her opinions are consistent with her own findings[2], the ALJ provided "specific and legitimate" reasons supported by substantial evidence to reject her opinions, namely that they were inconsistent with the opinions of other treating doctors and the Plaintiff's own reported symptoms. The ALJ discussed this evidence in detail in her written decision (Tr. at pp. 14-16), concluding that overall, the medical record was consistent with her findings regarding the Plaintiff's RFC and that while the Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," (i.e., pain), the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment. (*Id*. at p. 14).

Because pain is subjective, the ALJ correctly concluded that Plaintiff's credibility was critical. The ALJ found the Plaintiff not credible "for the reasons . . . which include positive Waddell's signs, drug seeking behavior, inconsistent reporting of symptoms, ongoing illegal drug use, failure to follow through with suggested/prescribed treatment, and 'dismissal from care' by several of his treating physicians." (*Id.*). An ALJ can only reject a plaintiff's statement about

---

[2] Although as the ALJ points out, Dr. Moise found that Plaintiff "exhibited negative straight leg raise tests, a normal gait, and generally normal muscle strength and sensation," (Tr. at p. 17), Dr. Moise also found that Plaintiff has "[s]evere spasm of left lower thoracic; left lumbar paraspinals and right lev. scap and trapezius in spasm (severe)" and a restricted range of motion. (Tr. at p. 418). See also Tr. at p. 345 ("severe palpable spasm of the bilateral lumbar paraspinals with a rigidly flat lumbar spine and loss of the normal lordosis"; "marked palpable tightness of the left upper cervical paraspinals"; "[l]eft pelvis is significantly higher than the right in both standing and supine positions, consistent with an upslip dysfunction of the sacroiliac joint"; "[w]ith back range of motion, he has 0 [degrees] extension range, normal bilateral bending range, and about 50% decrease in flexion range of motion").

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

pain and physical limitations based upon a finding of "affirmative evidence" of malingering or "expressing clear and convincing reasons" for doing so. *Smolen*, 80 F.3d at 1283-84.  "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in [his] testimony." *Tonapeytan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  See also *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002)(following factors may be considered: 1) claimant's reputation for truthfulness;  2) inconsistencies in the claimant's testimony or between his testimony and his conduct; 3) claimant's daily living activities; 4) claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition). The ALJ offered "clear and convincing reasons" supported by substantial evidence in the record that Plaintiff's pain complaints are not fully credible.  This evidence is set forth in detail in the ALJ's  written decision.  (Tr. at pp. 15-16).

Plaintiff was seen at Pain Management Of North Idaho, PLLC, beginning in June 2006, however, in September 2006 "[h]e was discharged . . . because of continued and persistent marijuana use and our unwillingness to prescribe opioid medication in the light of using an illegal substance."  (Tr. at p. 215).  Plaintiff tested positive for marijuana use on two occasions (*Id*.), and readily acknowledged he was using, even though he had been previously warned that it would result in his discharge from the clinic.  (Tr. at pp. 217 and 219).

Dr. Tohmeh saw the Plaintiff in late 2006 for a consultation regarding back pain.  Although he did not opine about Plaintiff's functional limitations, he did comment that "[t]his is a really difficult situation with chronic pain syndrome, poor motivation, and narcotic addiction."

Tycho E. Kersten, M.D., performed surgery on Plaintiff's right shoulder in March 2007 to repair a rotator cuff tear.  On August 29, 2007, "[f]ive months out" from that surgery, Dr. Kersten reported that Plaintiff had good range of

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

motion of the shoulder and overall was "doing well."  Dr. Kersten indicated he
"would certainly release [Plaintiff] to all activities," but thought "repetitive
overhead work or heavy lifting would certainly be difficult with his shoulder and
would agree with his plans" to not return to manual labor and get re-trained in
something else.  (Tr. at p. 263).  In June 2007, Dr. Kersten indicated he would
let the Plaintiff "do light duty work, if he had any to do," and noted Plaintiff was
not looking to return to work as a landscape laborer "as much because of his
back as his shoulder."  (Tr. at p. 264).  Plaintiff was referred by Dr. Kersten for
physical therapy and went to South Hill Physical Therapy for two visits, but
"was very adamant about the fact he did not want to be in physical therapy for
very long," even though he did very well in therapy.  (Tr. at p. 278).

Plaintiff saw Dr. Meyer up until April 2007 at which time their physician-
patient relationship was terminated because of Plaintiff's misuse of prescribed
pain medication.  Dr. Meyer's assessment was: "Drug Overuse and abuse in 46-
year old who is addicted to narcotics and misusing pain meds with a chronic
pain problem."

In October 2009, Plaintiff visited Dr. Charyk for "further discussion
concerning his chronic low back pain and chronic neck pain, and also for
evaluation of shoulder pain."  During that visit, Plaintiff clarified information he
had provided at his last visit "which he says might have implied he is markedly
sedentary."  Plaintiff told Dr. Charyk "he is responsible for all of the yard work
at the house, does much of the housekeeping and deals with other fix-it problems
such as plumbing."  (Tr. at p. 320).  During a visit a week earlier, Plaintiff stated
"he gets out a few times a week to walk 20 or 30 minutes, but some days his
back pain is such that it won't allow this," and that "[h]e gets out to see his
friends once in a while, but most of the time has been home reading or listening
to the radio."  (Tr. at p. 324).  He informed Dr. Charyk he was unwilling to go to
physical therapy. He was also resistant and negative about alternative treatment

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 12**

approaches such as Tai Chi and yoga, suggesting he would be better served by an increase in pain medication, but which Dr. Charyk rejected as "counterproductive." (Tr. at p. 325).

A report which the Plaintiff completed for the Social Security Administration in April 2010 was consistent with what Plaintiff represented to Dr. Charyk about his responsibilities at home (Tr. at p. 169) and furthermore, Plaintiff indicated his hobbies included gardening and playing frisbee. (Tr. at p. 171).

The ALJ provided "clear and convincing" reasons for discounting Plaintiff's credibility. This, in turn, constituted a "specific and legitimate" reason for discounting the opinions of Dr. Moise. Accordingly, substantial evidence in the record supports the ALJ's findings regarding Plaintiff's RFC which was based on the opinion of the medical expert, Dr. Hutson. Although that RFC does not allow the Plaintiff to return to his past relevant work, it does allow him to perform other jobs existing in significant numbers in the national economy, as testified to by the vocational expert.

## CONCLUSION

Substantial evidence supports the Commissioner's decision that Plaintiff was not disabled for any continuous 12 month period after March 13, 2007, the alleged onset date. Accordingly, Defendant's Motion For Summary Judgment (ECF No. 18) is **GRANTED** and Plaintiff's Motion For Summary judgment

//
//
//

(ECF No. 13) is **DENIED**. The Commissioner's decision denying benefits is **AFFIRMED**.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 13**

**IT IS SO ORDERED.**  The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel.

**DATED** this ___3rd___ of June, 2013.


*s/Lonny R. Suko*

_____
LONNY R. SUKO
United States District Judge

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 14**